UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. _____

LILIBETH ALVARADO TORRES,

     Plaintiff,

vs.

WALGREEN CO., and
WALGREENS BOOTS ALLIANCE, INC.,

     Defendants.

_____/

## COMPLAINT

Plaintiff, Lilibeth Alvarado Torres ("Plaintiff"), sues Defendants, Walgreen Co. and Walgreens Boots Alliance, Inc. ("WBA") (collectively, "Defendants"), and alleges as follows:

1. Plaintiff has initiated the instant action to redress violations by Defendants of the Americans with Disabilities Act, as Amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA"), and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

2. Plaintiff seeks all damages provided for under the ADA, FCRA, and FMLA, including attorneys' fees and costs.

### PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is an individual over the age of 18 and is otherwise sui juris.

4. During the relevant period, Plaintiff was a resident of the Middle District of Florida.

5. During the relevant period, Walgreen Co. was a Foreign Profit Corporation, which conducted business in the Middle District of Florida.

6. During the relevant period, WBA was incorporated under the laws of the State of

Delaware and held the stock of Walgreen Co.

7.    During the relevant period, Defendants acted through their owners, officers, agents, servants, and employees, all of whom acted within the scope of their employment or relationship with Defendants.

8.    During the relevant period, Defendants were Plaintiff's employer as that term is defined under the ADA, FCRA, and FMLA.

9.    During the relevant period, Defendants were co-employers or joint employers of Plaintiff because, among other reasons, they both directed and reviewed Plaintiff's work, controlled Plaintiff's work assignments, modified and set Plaintiff's employment terms and conditions, co-determined the essential terms and conditions of Plaintiff's employment, set Plaintiff's work schedule, determined Plaintiff's benefits, and controlled Plaintiff's FMLA leave.

10.    During the relevant period, Defendants shared resources and had common interests and ownership.

11.    Defendants operated as a single, common, interconnected entity.

12.    Jurisdiction is conferred upon this Court as claims arising under the ADA or FMLA can be brought in the appropriate District Court.

13.    In the 12 months prior to Plaintiff needing leave and/or requesting time off from work for her own serious health condition, Plaintiff worked for Defendants on a full-time basis and worked well in excess of 1,250 hours.

14.    During the relevant period, Defendants had at least 50 employees within a 75-mile radius of Plaintiff's workplace.

15.    This Court has supplemental jurisdiction over claims arising under the FCRA as the claims under the FCRA are so related to the claims brought pursuant to the ADA that they

form part of the same case or controversy, as set forth in 28 U.S.C. § 1367.

16.    This Court has jurisdiction over Plaintiff's claims as events leading to the filing of this Complaint took place in the Middle District of Florida.

17.    Venue is proper in the Middle District of Florida because:

a)    Plaintiff was employed by Defendants in the Middle District of Florida and would have remained employed in the Middle District of Florida but for Defendants' unlawful actions;

b)    The acts that gave rise to Plaintiff's claims occurred in the Middle District of Florida; and

c)    During the relevant period, Defendants transacted business in the Middle District of Florida.

## PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES

18.    Claims under the FMLA do not have prerequisites or preconditions to filing a lawsuit.

19.    Defendants terminated Plaintiff's employment on or about May 15, 2025.

20.    On August 20, 2025, Plaintiff dual-filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"). *See* Charge at **Exhibit A**.

21.    The Charge was investigated by the EEOC.

22.    Within 180 days of Charging Party filing the Charge, the EEOC and FCHR failed to: complete their investigations, conciliate the Charge, and/or determine if there is reasonable cause to believe that any discriminatory practice occurred.

3

23. On February 23, 2026, the EEOC issued a Dismissal and Notice of Right to Sue. *See* Notice of Right to Sue at **Exhibit B**.

24. Plaintiff filed this Complaint within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

25. On March 12, 2026, the Florida Commission on Human Relations issued its Notice of State Rights – Dual Filed Complaint. *See* Notice of State Rights at **Exhibit C**.

26. Plaintiff filed this Complaint within a year of the issue date of the Notice of State Rights.

27. Plaintiff has exhausted and/or met all prerequisites and preconditions to filing this action.

## FACTUAL ALLEGATIONS

28. Plaintiff began working for Defendants on or about June 28, 1997.

29. Throughout her over 28 years of employment with Defendants, Plaintiff was a devoted and dedicated employee who worked her way up through various positions and was eventually promoted to District Manager in 2021.

30. In that role, Plaintiff oversaw stores in the Area 26 FL Southwest – Miami in the Region 6 – District 647, which consisted of stores in Port Charlotte, North Port, Punta Gorda, North Fort Myers, Englewood, and Arcadia, Florida.

31. Throughout Plaintiff's career with Defendants, Plaintiff was a high performing employee who consistently received positive performance reviews.

32. In Plaintiff's 2023 annual review, Plaintiff received an overall rating of 4.0 - Exceeding Expectations.

33. Plaintiff never received any write-ups or disciplinary action during her employment

with Defendants prior to disclosing her medical conditions.

34.    However, everything changed once Plaintiff disclosed to Defendants that she suffered from attention deficit hyperactivity disorder ("ADHD"), anxiety, and depression, serious health conditions for which Plaintiff was seeking medical treatment.

35.    Plaintiff's medical conditions are physical and/or mental impairments that substantially limit several major life activities and constitute serious health conditions.

36.    In January 2023, Plaintiff was formally diagnosed with ADHD, anxiety, and depression.

37.    Plaintiff did not immediately disclose her diagnoses to Defendants as Plaintiff was concerned that she would be discriminated against.

38.    In approximately September 2023, Plaintiff's supervisor changed to Alessandro Palermo, Director of Pharmacy and Retail Operations for Area 26.

39.    Plaintiff only worked with Mr. Palermo for a brief period before she went out on leave under the FMLA for a pre-planned surgery in April 2024.

40.    Plaintiff was out on FMLA leave until the end of May 2024 when, because of Plaintiff's strong work ethic, Plaintiff requested to end her leave early and work from home so that her work would not fall behind and Plaintiff could support the team.

41.    Defendants granted Plaintiff's request, and Plaintiff worked remotely for the last part of her leave, successfully conducting store visits virtually.

42.    In June 2024, after returning from FMLA leave, Mr. Palermo held a Microsoft Teams meeting with Plaintiff to discuss store visits she had conducted, and questioned why Plaintiff had not logged the virtual visits she conducted while working remotely.

43.    Plaintiff explained that because the visits were virtual, Plaintiff did not log them in

the system as it was her understanding that only in-person visits were to be logged and that had been the process she had always followed in the past.

44.     Plaintiff made clear to Mr. Palermo that if he wanted Plaintiff to log the visits going forward, she would be happy to do so.

45.     Despite Plaintiff's collaborative tone, Mr. Palermo began yelling at her.

46.     Plaintiff became overwhelmed by Mr. Palermo's aggressive tone and demeanor and broke down into tears during the meeting.

47.     Mr. Palermo did not let up. He continued to speak to Plaintiff in a harassing and degrading tone.

48.     While Plaintiff had not wanted to disclose her medical conditions for fear of being treated differently, Plaintiff felt that she had no choice but to tell Mr. Palermo that she suffered from ADHD along with severe anxiety and depression.

49.     She further explained that at times, her mind would go blank as a result of these medical conditions.

50.     Plaintiff explained that her medical conditions made it difficult for her to input information for the store visits on her phone immediately after conducting the visit because the small screens caused Plaintiff's vision to blur. As a result, there could be some delay with Plaintiff's visit reports.

51.     After Plaintiff explained her medical conditions, her symptoms, and how they were impacting Plaintiff's ability to perform some tasks for her role, Mr. Palermo became even more irate and told Plaintiff that her medical conditions did not matter because he was discussing operations.

52.     At that point, Enedis Hernandez, a Human Resources representative who was also

on the call, stopped Mr. Palermo, asked Plaintiff to take a minute to calm down, and explained to Mr. Palermo what ADHD meant.

53.    After taking a few minutes to try to calm down, Plaintiff indicated to Mr. Palermo and Ms. Hernandez that she needed accommodations to help her manage her medical conditions.

54.    Immediately following Plaintiff's disclosure of her medical conditions, Mr. Palermo's treatment of Plaintiff deteriorated.

55.    Mr. Palermo began dismissing Plaintiff's ideas at meetings and treating Plaintiff differently than he had before Plaintiff's disclosure.

56.    Over the coming months, Mr. Palermo's harassment of Plaintiff intensified, including belittling Plaintiff during calls.

57.    For instance, during a hurricane in September/October 2024, Mr. Palermo falsely accused Plaintiff of not doing reports, which caused Plaintiff to experience extreme anxiety and further exacerbated her medical conditions during an already stressful time.

58.    Mr. Palermo's treatment of Plaintiff caused her to vomit after calls, and Plaintiff experienced incontinence while sitting in her car after a call with Mr. Palermo.

59.    Plaintiff expressed to Mr. Palermo on several occasions that his treatment of her was causing her severe anxiety.

60.    On November 26, 2024, Mr. Palermo met with Plaintiff to discuss some areas of alleged deficiencies primarily relating to the time that Plaintiff was taking to generate reports and log store visits.

61.    Mr. Palermo was already aware that any delays were related to Plaintiff's medical conditions for which Plaintiff needed an accommodation.

62.    Instead of working with Plaintiff to provide a reasonable accommodation, Mr.

7

Palermo initiated a "Coach and Grow Meeting," placing Plaintiff on a 30-day coaching period.

63.    After the meeting, Plaintiff worked very hard and completed all the steps that Mr. Palermo had outlined for her.

64.    Mr. Palermo, on the other hand, failed to meet his required follow-up in December 2024.

65.    On January 6, 2025, Mr. Palermo conducted a follow-up coaching session, which Damian Sanclair, Healthcare Supervisor, also attended.

66.    Despite Plaintiff meeting all the requirements of the "Coach and Grow Meeting," Mr. Palermo indicated that he was considering placing Plaintiff on a Performance Improvement Plan ("PIP").

67.    Plaintiff pushed back and told him that she had completed all the requirements and that his treatment of her was exacerbating the symptoms from Plaintiff's medical conditions.

68.    In response, Mr. Palermo told Plaintiff that he was not a doctor and that if Plaintiff did not like it, Plaintiff could take time off.

69.    Plaintiff again explained to Mr. Palermo that the accommodation she needed was not time off, but instead, to be allowed some additional time to complete tasks.

70.    Given Mr. Palermo's comments to Plaintiff and refusal to facilitate a reasonable accommodation, Plaintiff reached out to Dalma Castro, Employee Relations Specialist in Accommodations, to discuss Plaintiff's medical conditions and find out what steps Plaintiff needed to take to submit a written request for a reasonable accommodation from Human Resources.

71.    Ms. Castro explained to Plaintiff that Sedgwick handled accommodations for Defendants and would be able to provide additional information.

72.    Plaintiff called Sedgwick to find out what steps she needed to take and explained

8

to the representative that she was concerned about losing her job as her boss was out of control and Plaintiff was trying to work with her medical conditions.

73. Sedgwick generated a case number to document the call, and Mr. Palermo was notified.

74. Mr. Palermo immediately scheduled a call with Plaintiff and demanded to know why Plaintiff requested leave without telling him first.

75. Ms. Hernandez was present during this call and stopped Mr. Palermo while she proceeded to explain the process that Plaintiff had to follow with Sedgwick.

76. Plaintiff explained to Mr. Palermo that she had not requested a leave of absence but was simply seeking a reasonable accommodation to be able to perform the essential functions of her job.

77. For the first time, Ms. Hernandez explained to Plaintiff that Plaintiff could request intermittent leave under the FMLA and discussed the process.

78. Shortly after the call, Mr. Palermo scheduled an in-person meeting with Plaintiff and required Plaintiff to drive three hours to a store that Plaintiff was scheduled to visit the next day, which Mr. Palermo knew.

79. This was clearly done to further harass and intimidate Plaintiff and caused Plaintiff's symptoms to flare.

80. Plaintiff required an urgent appointment with her medical provider who indicated that Mr. Palermo's treatment and the work environment were detrimental to Plaintiff's health and recommended that Plaintiff take a medical leave.

81. Plaintiff applied for and received approval for intermittent FMLA leave effective from January 6, 2025, through January 8, 2026.

9

82.     Plaintiff also requested and received approval for reasonable accommodations, effective January 13, 2025, through March 18, 2026.

83.     The approved accommodations included: use of a recorder or AI note-taking tool during meetings and site visits; a larger device (tablet/large monitor) for visual tasks; scheduled 10-minute breaks every four hours (Pomodoro Technique); extended time for report submissions after site visits; access to corporate coaching/mentoring; extended time to complete missed work during medical leave; voice recording during store visits; and reduction of daily visits.

84.     However, given the damage that had been done to Plaintiff by Mr. Palermo, Plaintiff's medical provider recommended that Plaintiff take a brief leave of absence from February 1, 2025 through February 17, 2025.

85.     The leave period was later extended until March 10, 2025, due to Plaintiff's ongoing emotional distress caused by the work environment.

86.     Plaintiff's psychiatrist submitted a Return-to-Work letter in which he emphasized that Plaintiff was "cleared to return to work on March 10, 2025," but it was "imperative that [Plaintiff] be given ample time to complete and submit any work missed during [Plaintiff's] medical leave. This consideration will be crucial in ensuring [Plaintiff] can reintegrate effectively and maintain [Plaintiff's] professional performance."

87.     The Company ignored these recommendations.

88.     Upon Plaintiff's return to work from FMLA leave on March 10, 2025, Plaintiff was immediately subjected to further harassment.

89.     Mr. Palermo scheduled a meeting at the Fort Myers store but failed to attend.

90.     Instead of meeting with Mr. Palermo, Plaintiff learned that she was instead meeting with Asset Protection Managers, John Calhoun and Teresa Seda.

91.     They informed Plaintiff that they were there to conduct an interview as part of an investigation they were conducting regarding Plaintiff's visits to some stores.

92.     They explained that Mr. Palermo was claiming that Plaintiff did not visit the stores Plaintiff had claimed.

93.     The alleged issues with the store visits dated back months.

94.     Plaintiff was shocked to hear this.

95.     First, Plaintiff was just coming back to work from a medical leave during which Plaintiff had worked extensively with her providers to improve her mental health and was ready to come back to a productive work environment.

96.     Instead, Plaintiff was faced with additional retaliatory and discriminatory treatment.

97.     Plaintiff explained to the Asset Protection Managers that she suffers from ADHD and other medical conditions, that it was her first day back from FMLA leave, and that she could not believe she was being investigated.

98.     The Asset Protection Managers seemed to be unaware of Plaintiff's medical conditions and accommodation needs.

99.     Plaintiff explained that she had visited the stores but failed to hit "send" in the system due to Plaintiff's ADHD symptoms.

100.    Plaintiff was adamant that she visited the stores and told them to check video footage at each store to confirm.

101.    This exchange overwhelmed Plaintiff to the point that she started crying during the meeting.

102.    Plaintiff emphasized that she had been working so hard on her mental health during

her medical leave and all the progress she had made was being wiped out by the meeting.

103. The Asset Protection Managers stopped the interview and asked Plaintiff to prepare a statement instead.

104. On March 20, 2025, just ten days after Plaintiff returned from FMLA medical leave, Mr. Palermo placed Plaintiff on a PIP, which backdated the performance review period from January 22, 2025, through March 23, 2025.

105. This timing was clearly retaliatory, as it was implemented immediately after Plaintiff's return from a medical leave.

106. When Plaintiff pushed back, Mr. Palermo extended the PIP through May 20, 2025.

107. Mr. Palermo's micromanagement and harassment intensified.

108. For example, in direct violation of Plaintiff's approved accommodations, on March 25, 2025, Mr. Palermo imposed a new process requiring Plaintiff to send entry and exit emails for store visits while standing in front of security cameras.

109. He also required Plaintiff to enter visit reports before leaving each store, despite Plaintiff having an approved accommodation based on the specific recommendations by Plaintiff's medical providers that Plaintiff be given a reasonable amount of extra time to submit reports after site visits.

110. Mr. Palermo also questioned Plaintiff about the specific times during which Plaintiff was arriving at the stores for the visit.

111. Plaintiff repeatedly explained to him that her arrival times may be different on days when Plaintiff had a medical appointment.

112. On March 28, 2025, feeling overwhelmed by the continued harassment and retaliation, Plaintiff contacted Employee Relations and spoke with Noemy Ventura, Employee

Relations Specialist.

113. Plaintiff reported her concerns with Mr. Palermo's harassing, discriminatory, and retaliatory treatment, and discussed her medical conditions.

114. Ms. Ventura indicated that an investigation would be conducted, but Plaintiff never received any update or confirmation that an investigation had in fact been conducted and what the outcome was.

115. On April 10, 2025, Mr. Palermo made a surprise visit during Plaintiff's training session with Felix Palencia, District Manager.

116. During this surprise visit, Plaintiff demonstrated perfect mastery of the training topic, contradicting any claims about Plaintiff's inability to perform her job functions.

117. However, despite Plaintiff's performance, five days later, on April 15, 2025, Mr. Palermo issued Plaintiff a Final Written Warning.

118. Plaintiff expressed her disagreement as she had met all the requirements that Mr. Palermo had outlined for her and indicated that it was clearly retaliatory.

119. Despite having an open investigation for discriminatory and retaliatory treatment, and being in the middle of a PIP, that was not scheduled to end until May 20, 2025, Plaintiff was terminated on May 15, 2025.

120. The termination occurred while Plaintiff was performing her job duties at store 10670 in North Fort Myers.

121. Mr. Palermo and Cynthia Humphreys, HR Manager, called Plaintiff while she was sitting in her car and terminated her employment over the phone, citing failure to meet expectations.

122. Plaintiff was shocked and informed both Mr. Palermo and Ms. Humphreys that she

had an open case with Employee Relations and complained that the timing of her termination was retaliatory.

<u>COUNT I</u><br>
<strong>DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA AGAINST DEFENDANTS</strong>

123.   Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 122 above as though fully recited herein.

124.   During the relevant period, Plaintiff was disabled as she suffered from ADHD, anxiety, and depression, which are mental impairments that substantially limit several life activities, and/or was perceived as disabled, and therefore was a member of a protected class under the ADA.

125.   Defendants intentionally discriminated against Plaintiff because of Plaintiff's disabilities as set forth herein.

126.   Even if Defendants claim Plaintiff was not disabled, Plaintiff's mental impairments were perceived disabilities of which Defendants' decision-makers were aware of.

127.   These disabilities were neither transitory nor minor, and substantially limited several life activities, including the ability to work.

128.   Further, Defendants failed to provide Plaintiff with reasonable accommodations for Plaintiff's known and/or perceived disability, despite having been put on notice by Plaintiff of the need for accommodations.

129.   Instead of complying with their legal obligations, Defendants terminated Plaintiff's employment.

130.   Defendants' conduct was willful, intentional, and in disregard of Plaintiff's protected rights.

14

131. Defendants were aware that discrimination based on Plaintiff's disability, and the failure to provide a reasonable accommodation, was unlawful but acted in reckless disregard of the law.

132. As a result of Defendants' actions as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered extreme emotional distress and damage.

133. The conduct of Defendants, by and through the conduct of their agents, employees, and/or representatives, and Defendants' failure to take prompt remedial action, deprived Plaintiff of statutory rights under the law.

134. The actions of Defendants and/or their agents, employees, and/or representatives were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages such as economic, compensatory, and punitive damages.

135. Plaintiff has suffered and will continue to suffer compensable damages because of Defendants' discriminatory actions.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendants:

A. Adjudge and decree that Defendants violated the ADA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Award Plaintiff back pay, owed bonuses, and lost benefits;

C. Require Defendants to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendants or in lieu of reinstatement, award front pay;

D. Award Plaintiff compensatory damages;

E.      Award Plaintiff punitive damages;

F.      Award Plaintiff attorneys' fees and costs;

G.      Award Plaintiff all recoverable interest; and

H.      Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT II
## UNLAWFUL RETALIATION IN VIOLATION OF THE ADA AGAINST DEFENDANTS

136.    Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 122 above as though fully recited herein.

137.    Plaintiff engaged in protected activity under the FCRA when she requested accommodations because of her disabilities and/or perceived disabilities and disclosed her disabilities.

138.    Defendants intentionally retaliated against Plaintiff by, among other things, terminating her employment because she exercised rights protected under the ADA.

139.    Plaintiff was terminated in close proximity to her protected activity.

140.    Defendants' conduct was willful, intentional, and in disregard of Plaintiff's protected rights.

141.    Defendants were aware that retaliating against Plaintiff because of Plaintiff's exercise of protected rights was unlawful but acted in reckless disregard of the law.

142.    As a result of Defendants' actions as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered extreme emotional distress and damage.

143.    The conduct of Defendants, by and through the conduct of their agents, employees, and/or representatives, and Defendants' failure to take prompt remedial action to prevent

retaliation against the Plaintiff, deprived Plaintiff of statutory rights under the law.

144.    The actions of Defendants and/or their agents, employees, and/or representatives were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages such as economic, compensatory, and punitive damages.

145.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendants' retaliatory actions.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendants:

A.    Adjudge and decree that Defendants violated the ADA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Award Plaintiff back pay, owed bonuses, and lost benefits;

C.    Require Defendants to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendants or in lieu of reinstatement, award front pay;

D.    Award Plaintiff compensatory damages;

E.    Award Plaintiff punitive damages;

F.    Award Plaintiff attorneys' fees and costs;

G.    Award Plaintiff all recoverable interest; and

H.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**COUNT III**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE FCRA AGAINST DEFENDANTS**

146.    Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 122

above as though fully recited herein.

147.   During the relevant period, Plaintiff was disabled as she suffered from ADHD, anxiety, and depression, which are mental impairments that substantially limit several life activities, and/or was perceived as disabled, and therefore was a member of a protected class under the FCRA.

148.   Defendants intentionally discriminated against Plaintiff because of Plaintiff's disabilities as set forth herein.

149.   Even if Defendants claim Plaintiff was not disabled, Plaintiff's mental impairments were perceived disabilities of which Defendants' decision-makers were aware.

150.   These disabilities were neither transitory nor minor, and substantially limited several life activities, including the ability to work.

151.   Further, Defendants failed to provide Plaintiff with reasonable accommodations for Plaintiff's known and/or perceived disability, despite having been put on notice by Plaintiff of the need for accommodations.

152.   Instead of complying with its legal obligations, Defendants terminated Plaintiff's employment.

153.   Defendants' conduct was willful, intentional, and in disregard of Plaintiff's protected rights.

154.   Defendants were aware that discrimination based on Plaintiff's disability, and the failure to provide reasonable accommodations, was unlawful but acted in reckless disregard of the law.

155.   As a result of Defendants' actions as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered extreme emotional

distress and damage.

156.    The conduct of Defendants, by and through the conduct of their agents, employees, and/or representatives, and Defendants' failure to take prompt remedial action, deprived Plaintiff of statutory rights under the law.

157.    The actions of Defendants and/or their agents, employees, and/or representatives were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages such as economic, compensatory, and punitive damages.

158.    Plaintiff has suffered and will continue to suffer compensable damages because of Defendants' discriminatory actions.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendants:

A.    Adjudge and decree that Defendants violated the FCRA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Award Plaintiff back pay, owed bonuses, and lost benefits;

C.    Require Defendants to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendants or in lieu of reinstatement, award front pay;

D.    Award Plaintiff compensatory damages;

E.    Award Plaintiff punitive damages;

F.    Award Plaintiff attorneys' fees and costs;

G.    Award Plaintiff all recoverable interest; and

H.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT IV
## UNLAWFUL RETALIATION IN VIOLATION OF THE FCRA AGAINST DEFENDANTS

159. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 122 above as though fully recited herein.

160. Plaintiff engaged in protected activity under the FCRA when she requested accommodations because of her disabilities and/or perceived disabilities and disclosed her disabilities.

161. Defendants intentionally retaliated against Plaintiff by, among other things, terminating her employment because she exercised rights protected under the FCRA.

162. Plaintiff was terminated in close proximity to her protected activity.

163. Defendants' conduct was willful, intentional, and in disregard of Plaintiff's protected rights.

164. Defendants were aware that retaliating against Plaintiff because of Plaintiff's exercise of protected rights was unlawful but acted in reckless disregard of the law.

165. As a result of Defendants' actions as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered extreme emotional distress and damage.

166. The conduct of Defendants, by and through the conduct of their agents, employees, and/or representatives, and Defendants' failure to take prompt remedial action to prevent retaliation against the Plaintiff, deprived Plaintiff of statutory rights under the law.

167. The actions of Defendants and/or their agents, employees, and/or representatives were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's

20

statutorily protected rights, thus entitling Plaintiff to damages such as economic, compensatory, and punitive damages.

168.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendants' retaliatory actions.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendants:

A.    Adjudge and decree that Defendants violated the FCRA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Award Plaintiff back pay, owed bonuses, and lost benefits;

C.    Require Defendants to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendants or in lieu of reinstatement, award front pay;

D.    Award Plaintiff compensatory damages;

E.    Award Plaintiff punitive damages;

F.    Award Plaintiff attorneys' fees and costs;

G.    Award Plaintiff all recoverable interest; and

H.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**COUNT V**</u>
**UNLAWFUL RETALIATION IN VIOLATION OF THE FMLA AGAINST DEFENDANTS**

169.    Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 122 above as though fully recited herein.

21

170. Defendants are an employer covered by the FMLA because Defendants were a private employer that employed 50 or more employees in 20 or more work weeks in the current or previous calendar year.

171. Plaintiff was eligible for protections under the FMLA because she worked for a covered employer, she worked for Defendants for at least 12 months as of the date the FMLA leave started and/or was needed, she worked at least 1,250 hours of service for Defendants during the 12-month period immediately before the date the FMLA leave started and/or was needed, and worked at a location where Defendants employed at least 50 employees within a 75-mile radius of that worksite.

172. Plaintiff was entitled to FMLA leave because of her own qualifying serious health condition.

173. As set forth herein, Defendants retaliated against Plaintiff by, among other things, terminating Plaintiff's employment because Plaintiff repeatedly advised Defendants about her serious health conditions, her need for treatment, and because she took protected leave under the FMLA.

174. Defendants' conduct constituted a willful violation of the FMLA. Therefore, Plaintiff is entitled to liquidated damages.

175. As a result of Defendants' intentional, willful, and unlawful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including past and future lost wages and benefits. Plaintiff is also entitled to liquidated damages, attorneys' fees and costs, and other damages recoverable by law.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendants:

22

A.    Adjudge and decree that Defendants violated the FMLA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Award Plaintiff back pay, owed bonuses, and lost benefits;

C.    Require Defendants to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendants or in lieu of reinstatement, award front pay;

D.    Award Plaintiff liquidated damages equal to the sum of the amount of damages and interest;

E.    Award Plaintiff attorneys' fees and costs; and

F.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a jury trial of all issues so triable.

Dated: April 17, 2026

Respectfully submitted,

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506

By: s/ Anisley Tarragona
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com
Attorneys for Plaintiff